IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

THERESA A. LOGAN, f/k/a THERESA
A. ODEJIMI,

    Plaintiff,      Civil Action No.
             3:18-CV-0593 (GTS/DEP)
 v.

TOWN OF WINDSOR, *et al.*,

    Defendants.

---

APPEARANCES:         OF COUNSEL:

FOR PLAINTIFF:

THERESA A. LOGAN, *Pro se*
50 Williams Road
Windsor, NY 13865

FOR DEFENDANTS:

NONE

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

  This is an action commenced by *pro se* plaintiff Theresa A. Logan, formerly known as Theresa A. Odejimi, against the Town of Windsor, two of its employees, and its insurer. Following the *sua sponte*, conditional dismissal of her original complaint upon initial review, plaintiff submitted a

second amended complaint containing many of the same allegations as in its predecessor. Plaintiff's amended pleading has been forwarded to me for review, pursuant to 28 U.S.C. § 1915(e), in light of the fact that she is proceeding in the matter *in forma pauperis* ("IFP"). For the reasons set forth below, I recommend that her second amended complaint be dismissed, without leave to replead.

I.     BACKGROUND

Plaintiff's original complaint in this action was filed on May 18, 2018, and was accompanied by a request for leave to proceed without prepayment of the required filing fees. Dkt. Nos. 1, 2. On June 26, 2018, following my review of plaintiff's IFP application and original complaint, I issued an order, report, and recommendation, in which I granted plaintiff IFP status but recommended dismissal of her complaint due to the failure to plausibly allege subject-matter jurisdiction, with leave to replead. Dkt. No. 4. In lieu of an objection, plaintiff filed an amended complaint on July 11, 2018. Dkt. No. 5.

On August 14, 2018, Chief District Judge Glenn T. Suddaby issued a decision and order, in which he generously construed plaintiff's complaint to assert claims under 42 U.S.C. § 1983 and concluded that while the court possesses subject matter jurisdiction to address those claims, the

complaint failed to set forth factual allegations plausibly suggesting that plaintiff's rights were violated under either the First or Fourteenth Amendments. *See generally* Dkt. No. 6 (citing *Sharp v. Town of Greece*, No. 09-CV-6452, 2010 WL 1816639, at *4-6 (W.D.N.Y. May 3, 2010)).

After the issuance of my order, report, and recommendation, but prior to the issuance of Chief Judge Suddaby's decision, plaintiff submitted an amended complaint that did not cure the defects discerned by the court. Dkt. No. 5. Because plaintiff did not have the benefit of that decision when preparing her amended complaint, Chief Judge Suddaby dismissed the amended complaint and ordered that the dismissal be with prejudice unless she filed a second amended complaint that corrected the noted deficiencies. Dkt. No. 6 at 5.

On September 14, 2018, plaintiff availed herself of the opportunity to replead by submitting a second amended complaint ("SAC"), which largely tracked the amended complaint, but appended multiple exhibits. *See generally* Dkt. No. 7. Plaintiff's SAC names Robert Brinks, Gregg Story, the Town of Windsor, and New York Municipal Insurance Reciprocal ("NYMIR"), all residents of the State of New York, as defendants. *Id.* at 1; *see also id.* at 21 ("defendants reside in New York State.").

According to plaintiff's SAC, during the morning of March 7, 2011,

3

she was struck by debris thrown by a snowplow owned by the Town of Windsor and driven by defendant Brinks, with defendant Story operating as the snowplow's "wingman." Dkt. No. 7 at 2-6. Plaintiff characterizes the actions of defendants Brinks and Story as being intentional, alleging that they were "pointing, waving, laughing and taunting [her] as if what they had just done, was a joke and very funny to them." *Id.* at 6; *but see* Dkt. No. 7-7 at 12-16.

Plaintiff alleges that nearly two years after the incident, on February 6, 2013, she was forced to resign from her job as a result of the injuries that she sustained from the incident. Dkt. No. 7 at 9. In addition, in 2014, plaintiff underwent two surgical interventions to repair injuries she sustained to her lower and upper back as a result of having been struck by the debris. *Id.* at 10.

In her SAC, plaintiff persists in referring to a state court action brought before Justice Ferris D. Lebous in New York State Supreme Court, Broome County. Dkt. No. 7 at 13-15, 18. In that action, plaintiff was apparently represented by attorney Ronald R. Benjamin, Esq. at one point, before deciding to proceed *pro se* after she was unable to secure new counsel to replace Attorney Benjamin. *Id.* at 11-12, 20; *see also* Dkt. No.

4

7-4 at 14.[1] Plaintiff claims that the testimony given by defendants Brinks and Story during the course of that lawsuit was untruthful and that they failed to respond to her discovery requests. *Id.* at 13-15. In support of that allegation, plaintiff points to various factual disputes that arose during the course of the state court action, including regarding the amount of snow that had fallen, the approximate time the accident occurred, the rate of speed at which the snowplow was traveling, and whether the lights on the snowplow were activated at the time of the March 7, 2011 incident. *Id.* at 2-3, 13-15.

Plaintiff further alleges that the Town of Windsor refused "to discuss settlement" of that state court matter. *See* Dkt. No. 7 at 12. That claim is refuted, however, by documents appended to plaintiff's SAC which indicate instead that settlement negotiations broke down between the parties, with plaintiff referring to the settlement offer that she received from

---

[1] According to public filings available from the Broome County Clerk's Office in *Odejimi v. Town of Windsor*, Index No. 2011-2394, plaintiff, through Attorney Benjamin, commenced a personal injury action against the Town of Windsor on September 20, 2011. On May 15, 2015, Attorney Benjamin was relieved of further representation of plaintiff pursuant to N.Y. C.P.L.R. § 321 following his oral application to Justice Lebous. Plaintiff proceeded *pro se* until the case was dismissed by decision and order of Justice Lebous, dated May 25, 2016, in which he granted the Town of Windsor's summary judgment motion in its entirety. Plaintiff's appeal of that decision and order was dismissed by New York State Supreme Court, Appellate Division, Third Department, on October 6, 2016.

5

the Town of Windsor's counsel as "ridiculous." Dkt. No. 7-5 at 10-11.

As relief in this action, plaintiff seeks, *inter alia*, and award of damages in the sum of $209,000. Dkt. No. 7 at 4.

II.   DISCUSSION

   A.   Sufficiency of Plaintiff's SAC

Because I previously determined that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in her SAC in light of 28 U.S.C. § 1915(e). Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations. *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The court, however, also has an overarching obligation

6

to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a

7

pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere

8

possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

    B.    <u>Analysis</u>

In his decision, Chief Judge Suddaby indicated his belief that plaintiff could be considered to be asserting claims under the Due Process clause of the Fourteenth Amendment and the state-created danger doctrine, as well as a First Amendment court access claim.

    1.    <u>State-Created Danger Doctrine</u>

The state-created danger doctrine is an exception to the general rule that prohibits substantive due process claims based upon a state's failure to protect. *See Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 419 (2d Cir. 2009); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 164 (1993). This doctrine subjects state actors to liability under 42 U.S.C. § 1983 if the state actors "affirmatively created or enhanced the danger of *private violence.*" *Okin*, 577 F.3d at 428 (emphasis supplied) (citing *Dwares*, 985 F.2d 94 at 99). Thus, the due process clause "may be violated when . . . *affirmative* conduct [by state actors] . . . creates or increases the risk of private

9

violence, and thereby enhances the danger to the victim." *Okin*, 577 F.3d at 428 (citing *Hemphill v. Schott*, 141 F.3d 412, 418-19 (2d Cir. 1998)).

Mindful of the Supreme Court's admonition not to permit the due process clause to " 'transform every tort committed by a state actor into a constitutional violation,' " the Second Circuit has imposed liability for a state-created danger "with considerable stringency." *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 190 (1989)); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States[.]' "). As a result, even where government action causes bodily harm to a plaintiff, there is no "substantive due process violation unless 'the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." *Id.* at 81 (internal quotation marks and citations omitted).

Here, plaintiff has failed to plausibly allege a violation of the state-created danger doctrine. Although the incident that unfolded on the morning of March 7, 2011, appears to have been traumatic for plaintiff, I cannot conclude from her allegations that any of the defendants' conduct was so outrageous and egregious that it rose to the level of being "brutal and offensive to human dignity." *Lombardi*, 485 F.3d at 81; *see generally Quinn v. Badolato*, No. 16-CV-0591, 2016 WL 4107701, at *7 (E.D. Pa. Jul. 29, 2016) ("Defendants' action of plowing snow and ice into Plaintiff's driveway cannot be said to shock the conscience."). The allegations in plaintiff's SAC suggest little more than the alleged negligent infliction of harm—rather than the intentional infliction of harm—which is " 'categorically beneath the threshold of constitutional due process.' " Okin, 577 F.3d at 431 (quoting *Cnty. of Sacramento*, 523 U.S. at 849).

Accordingly, because plaintiff fails to plausibly allege a violation of her Fourteenth Amendment rights pursuant to the state-created danger doctrine, I recommend that the claim be dismissed.

### 2. Right of Access to Courts

"A plaintiff's 'constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress.' " *Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2017)

(quoting *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008)); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In general, right of access claims fall within two categories,[2] only the second of which plaintiff appears to be invoking based on her allegations that defendants failed to provide discovery, thereby undercutting her otherwise allegedly meritorious claim. *See generally Sousa v. Marquez*, 702 F.3d 124, 127-28 (2d Cir. 2012).

In the second category, " 'the theory is that the cover-up has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff discovered the cover-up.' " *McElligott v. City of New York*, No. 15-CV-7107, 2017 WL 6210840 (S.D.N.Y. Dec. 7, 2017) (quoting *Tavares v. N.Y.C. Health & Hospitals Corp.*, No. 13-CV-3148, 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015)); *see generally Christopher*, 536 U.S. at 413-14. The Second Circuit has expressly

---

[2] The first category, known as a "forward-looking right of access claim" involves "systemic official action[, which] frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In this first category, the remedy is to remove the impediment to access so that a plaintiff or plaintiff class may pursue the claim. *See id.*
The second category, known as a "backward-looking right-of-access claim," involves "specific litigation [that] ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Christopher*, 536 U.S. at 414 (footnotes omitted).

questioned the continued vitality of this type of access to courts claim, but noted that it could be viable "if a judicial remedy was completely foreclosed by the false statement or nondisclosure." *Sousa*, 702 F.3d at 128.

Even if a backward-looking right of access claim is available in the Second Circuit, plaintiff's claim falls well outside the scope of that purported right. Although plaintiff complains that she was not able to access certain discovery and suggests that defendants Brinks and Story were untruthful during their depositions, *see* Dkt. No. 7 at 13-16, there are no facts that plausibly suggest that any statements were *intentionally* misleading or that those statements foreclosed plaintiff's ability to present her state court claims to Justice Lebous. To allege that defendants "manipulated relevant facts," apparently here in the form of factual disputes between the parties, does not elevate plaintiff's claim and transform it into a cognizable right of access claim when plaintiff was aware of the facts that gave rise to her prior claim.

Moreover, plaintiff's SAC and the incorporated documents conclusively demonstrate that her ability to bring a personal injury action was not "completely foreclosed" by defendants' conduct. *Oliva v. Town of Greece, NY*, 71 F. Supp. 3d 368, 374 (W.D.N.Y. Dec. 1, 2014) (Geraci,

J.). Although plaintiff may have preferred a different outcome, the fact that she failed to "make [her] case, whether through inadequate discovery or otherwise," does not mean that she can "relitigate that dispute through a denial-of-access claim." *Sousa*, 702 F.3d at 129. As the Second Circuit has recognized, "[t]he premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research," but rather adjudicate legal questions based on the facts and legal arguments "presented and argued by the parties before them." *Coalition on W. Valley Nuclear Wastes v. Chu,* 592 F.3d 306, 314 (2d Cir. 2009) (internal quotation marks omitted) (citing *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.)). Whether plaintiff was represented or proceeded *pro se,* it was her responsibility to allege and then prove the factual and legal basis for her claim.

Because plaintiff's SAC fails to plausibly allege that she was conclusively foreclosed from the courts based on the intentionally misleading statements of any of the defendants, I recommend that her right of access claim be dismissed.

### 3. <u>Pendent State Law Tort Claims</u>

The final question to be addressed is whether the court should exercise supplemental jurisdiction over plaintiff's state law tort claims. A

14

federal court is authorized to decline supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed pursuant to 28 U.S.C. § 1367. 28 U.S.C. § 1367(c)(3); *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014); *Stephenson v. Albany Cnty. Policymakers*, No. 09-CV-0326, 2009 WL 2922805, at *2 (N.D.N.Y. Aug. 14, 2009) (Treece, M.J.), *report and recommendation adopted by* 2009 WL 3232294 (N.D.N.Y. Oct. 2, 2009) (Kahn, J.).

A district court may, in its discretion, entertain supplemental jurisdiction over state law claims, even where all federal causes of action have been dismissed, to further " 'fairness' or 'judicial efficiency,' or to resolve any 'novel or unsettled issues of state law.' " *Trade Wind Distrib., LLC v. Unilux Ag*, No. 10-CV-5716, 2011 WL 4382986, at *8 (E.D.N.Y. Sep. 20, 2011) (quoting *Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000)). "[I]n the usual case in which all federal-law claims are eliminated before trial, [however,] the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *accord Kroshnyi*, 2014 WL 5572456,

at *5; *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J. concurring) ("[A] district court ought not to exercise supplemental jurisdiction over purely state-law claims [where all federal claims are dismissed] unless there are strong reasons for doing otherwise.").

Having concluded that plaintiff has failed to plausibly allege a viable federal claim pursuant to 42 U.S.C. § 1983, insofar as her SAC may be deemed to state any cognizable claims under state law, factors such as judicial economy, convenience, fairness, and comity militate against the exercise of supplemental jurisdiction. Accordingly, I recommend that the court decline to exercise supplemental jurisdiction over any cognizable state law claims pursuant to 28 U.S.C. § 1367(c)(3).

    C.    <u>Whether to Permit Amendment</u>

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could

not "determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this case, plaintiff has already been given one opportunity to amend her complaint, after having been alerted to the precise deficiencies discerned in her original pleadings. Plaintiff has failed to correct the shortcomings identified by the court and, as a result, her SAC fares no better than the original in that it continues to lack sufficient factual allegations plausibly suggesting a violation of her constitutional rights pursuant to 42 U.S.C. § 1983. Although plaintiff is proceeding *pro se*,

given that she has already been afforded one opportunity to amend, I recommend against granting her leave to amend. *See Pirro v. Nat'l Grid*, No. 12-CV-1364, 2014 WL 1303414, at *5 (N.D.N.Y. Mar. 31, 2014) (Suddaby, J.) ("[W]hile generally leave to amend a pleading should be freely given, granting a plaintiff an opportunity to amend before dismissal of his action is not required where the plaintiff has already been afforded the opportunity to amend.").

IV. SUMMARY AND RECOMMENDATION

Although plaintiff availed herself of the opportunity to file an amended pleading, her SAC fails to cure the deficiencies that were identified by the court in its prior order. Accordingly, it is respectfully

RECOMMENDED that plaintiff's SAC (Dkt. No. 7) be DISMISSED, with prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[3] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[3] If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

    It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation on plaintiff in accordance with the court's local rules.

*[signature]*

David E. Peebles
U.S. Magistrate Judge

Dated:    September 28, 2018
             Syracuse, New York

---

legal holiday. Fed. R. Civ. P. 6(a)(1)(C).